37846.   JONES *v.* HUTCHINS.

DECIDED JANUARY 15, 1960—REHEARING DENIED
JANUARY 29, 1960.

142

*Gordon Lanier, T. Reuben Burnside, Carlton G. Matthews, Jr., Fulcher, Fulcher, Hagler & Harper,* for plaintiff in error.

*Hull, Willingham, Towill & Norman, Robert C. Norman, Abbott & Abbott, James C. Abbott,* contra.

TOWNSEND, Judge. ■ In the original petition the plaintiff alleged that the knee and leg injury were partially permanent and she could not determine the extent of disability. In addition to reimbursement for her expenses she sued only for damages for pain and suffering. By amendment she asked damages for loss of earning capacity based on a pecuniary decrease in earnings

to be received reduced to its present cash value. The instruction complained of was undoubtedly given under this pleading, and the question is whether there was any evidence in the record to support it.

Early in the history of negligence law in this State plaintiffs were confronted with situations in which they were, either because of infancy, coverture, or like reasons, unable to show a present ability either to embark on gainful employment, or to retain the proceeds of their labor. See *Metropolitan St. R. Co.* v. *Johnson,* 90 *Ga.* 500, 508 (16 S. E. 49). In *Atlanta St. R. Co.* v. *Jacobs,* 88 *Ga.* 647, 650 (15 S. E. 825) the court charged: "A physical injury which impairs the capacity of a married woman to labor is classified by the law with pain and suffering. It is not to be measured by pecuniary earnings, for such earnings, as a general rule, belong to the husband, and the right of action for their loss is in him, but the wife herself has such an interest in her working capacity as that she can recover something, in a proper case, for its impairment, and what she is allowed ought to be more or less according to the nature of the injury and the length of time during which the pain and deprivation is likely to continue." The court held: "It seems to us that the loss or material impairment of any power or faculty is matter for compensation irrespective of any fruits, pecuniary or otherwise, which the exercise of the power or faculty might produce; and irrespective, also, of any conscious pain or suffering which the loss or impairment might occasion." As to an infant, the following charge was approved in *Western & Atlantic R. Co.* v. *Young,* 81 *Ga.* 397 (4), 411 (7 S. E. 912, 12 Am. St. Rep. 320): "Where the injured party is too young to have selected an avocation, or to begin to illustrate, by his labor, his wage earning capacity, the matter of the amount of damages for a permanent injury rests in the sound discretion of the jury, to be exercised in the light of their common observation and experience, and aiming to compensate the plaintiff for the injury actually sustained." The court held that "impaired capacity to pursue the ordinary avocations of life" might be compensated for as a part of the pain and suffering. The rule, first expressed in our law in order to award compensation for permanent injury where there was no earning

capacity as such, has been fully recognized up to the present time. *Atlanta & W. P. R. Co.* v. *Haralson*, 133 *Ga.* 231 (65 S. E. 437). *Railway Exp. Agency* v. *Standridge*, 68 *Ga. App.* 836, 837 (24 S. E. 2d 504); *City of Manchester* v. *Beavers*, 38 *Ga. App.* 337, 342 (144 S. E. 11); *Wall Realty Co.* v. *Leslie*, 54 *Ga. App.* 560 (3) (188 S. E. 600); *Chancey* v. *Shirah*, 96 *Ga. App.* 91, 95 (99 S. E. 2d 365); *City Council of Augusta* v. *Drawdy*, 75 *Ga. App.* 543, 549 (43 S. E. 2d 569).

2. A different problem is presented where the plaintiff who has suffered permanent injury which will by its nature tend to lessen the amount he may be expected to receive during his lifetime as a result of gainful employment seeks compensation for such injury, and where what the plaintiff actually earns or will earn and his "earning capacity" or capacity to gain a livelihood as the result of his work and labor tend to equate with each other. In such a case it is entirely possible that the evidence will show facts from which a mathematical calculation may be projected as to loss of future earnings, and such evidence, of course, is always sufficient on which to base an instruction as to loss of such future earnings. See *Southern Ry. Co.* v. *Groover*, 41 *Ga. App.* 746 (4) (154 S. E. 706); *Pollard* v. *Gammon*, 63 *Ga. App.* 852, 864 (12 S. E. 2d 624); *Draper Canning Co.* v. *Dempsey*, 91 *Ga. App.* 593, 597 (86 S. E. 2d 678).

The difficulty arises in that large class of cases, approaching a majority, in which the plaintiff has obviously been permanently injured in a way and manner which the jury through common experience knows will tend over the plaintiff's lifetime to decrease his capacity to earn a living in the occupation which the evidence shows him to engage in, and yet the evidence fails to show any actual mathematical loss at the time of trial which may be projected as such into the future. The question then arises whether this court has applied too stringently the rule that there must be evidence on which to base an instruction to the jury that they may compensate for such loss, so as to preclude the plaintiff from recovery in any case where he cannot mathematically show a pecuniary loss *at the time of trial* which may itself be projected into the future. That this court has done so will be seen from cases later discussed here. The result has been reached by

considering "loss of earning capacity" and "loss of future earnings" as synonymous. See *Western & Atlantic R.* v. *Hart,* 95 *Ga. App.* 810, 821 (99 S. E. 2d 302).

Early Supreme Court cases show no such insistence upon exactitude in determining loss of earning capacity. The phrase first appears, so far as our research has indicated in *Brush Electric Light &c. Co.* v. *Simonsohn,* 107 *Ga.* 70, 73 (32 S. E. 902), where a charge to the effect that mental suffering "which a man may have from the consciousness that his earning capacity is injured for life" is compensable as pain and suffering. The charge was held correct, among other reasons, because the court also charged in connection therewith the following: "You can give damages for diminution of earning capacity, if the evidence justifies you to find that his earning capacity has been diminished, and that defendant is liable therefor."

We think this case enunciates the true rule, and one from which the Supreme Court, at least, has never departed. What it is necessary to show, in order to authorize a charge for diminished earning capacity, is facts from which the jury may find in what degree the earning capacity has diminished. It is not always necessary for this purpose to show that the earnings have decreased as of the time of trial. *City of Atlanta* v. *Jolly,* 39 *Ga. App.* 282 (4) (133 S. E. 63). In *Central of Georgia Ry. Co.* v. *Bell,* 135 *Ga.* 846 (3) (70 S. E. 321) error was assigned on a charge to the effect that in awarding compensation for permanent injury the jury might consider the plaintiff's "prospect of obtaining steady and remunerative employment in the future, and the like insofar as they may be illustrated by the evidence" on the ground that there was no evidence of the plaintiff's future prospects, and it was held that evidence as to his earning capacity at the time of the injury, plus testimony as to his capabilities (apparently combined with testimony as to the permanent effects of his injury) was sufficient to support the charge. This instruction relates to future earning capacity, and nothing else. It allows the jury to determine that *capacity* from the data at hand. On the other hand, apparently the first case to be reversed for lack of evidence justifying a charge on "decreased capacity to work," which charge also permitted a recovery for "any

increase in his earning capacity if this injury had not occurred," stated that "the error consists . . . in opening up to the jury the right to investigate a matter with the view of increasing damages, by suggesting a measure of damages upon which they [the jury] have no data whatever to base any finding." It appears in that record merely that the plaintiff worked in a quarry and received an injury to his head; there was no proof as to earnings either before or after the injury or as to percentage of disability. *City Council of Augusta* v. *Owens*, 111 *Ga.* 464, 480 (36 S. E. 830). In *Atlanta, K. & N. Ry. Co.* v. *Gardner*, 122 *Ga.* 82 (2) (49 S. E. 818) it was held that "when no evidence was submitted in reference to the earning capacity of the plaintiff *prior to the injuries*" (italics ours), there was no measure of damages except the enlightened conscience of an impartial jury. The pleadings and proof in that case showed only that the plaintiff sought damages as a part of the pain and suffering for decreased ability to labor. In *O'Neill Mfg. Co.* v. *Pruitt*, 110 *Ga.* 577, 579 (36 S. E. 59) complaint was made on the ground that it was error to instruct the jury in the use of annuity tables because "there was no evidence that the plaintiff's earning capacity had been diminished in whole or in part"; thus a part at least of the assignment of error in that case is exactly the same as in the one under consideration. The court by a full-bench decision held that evidence as to what the plaintiff had done at the time of the injury, plus evidence of his injury ("the jury saw his injured hand") plus evidence that he was wholly incapacitated at the time of trial was sufficient to authorize the jury to infer "a partial loss of capacity from its condition." This case is the controlling precedent here.

Although there the plaintiff was wholly incapacitated at the time of the trial and here the plaintiff was only 10% incapacitated, according to the opinion of her attending physician, the jury was authorized to find from these facts a *partial* future incapacity. It follows that here the jury is authorized to find a partial diminution of earning capacity, and necessarily future earnings. While the court there also referred to "capacity to labor" it is obvious, from the fact that the complaint was directed to the authorization to use annuity tables to convert the amount

lost to present cash value, that it was talking about earning capacity, or future earnings. In fact, the error assigned was that "there was no evidence that the plaintiff's earning capacity had been diminished in whole or in part." Whatever distinctions this court or the Supreme Court has made between the phrases "ability to work," "capacity to labor" and "earning capacity" it is self-evident that, in the absence of special definition, a jury of laymen will take the terms to be synonymous. The true rule distilled from the above cited older cases, it appears to this court, is that the plaintiff is entitled to compensation for the injury received; that where the injury is permanent and affects his ability to labor and earn money this also should be compensated for; that where there is no evidence from which the amount of earned money which may be lost over the remaining lifetime is in evidence the amount is in the enlightened conscience of the jury and may be classified with pain and suffering; that where there is evidence from which the pecuniary value of the loss may be estimated this should be reduced to its present cash value; that where there is evidence that the plaintiff is earning and will continue to earn money and that his earning capacity has been diminished, an award may be made based on percentage of diminution of earning capacity; that an award based on diminution of earning capacity lies, as to the evidence which may be available to support it, somewhere between those instances where lost earnings may be mathematically established and projected into the future with some degree of definiteness, and those instances where, there being no loss of earnings, the plaintiff may still be awarded damages in the enlightened conscience of the jury for consciousness of diminished capacity to labor and work. Finally, it is the opinion of this court that wherever there is evidence of the pecuniary value of the plaintiff's earning capacity at the time of injury coupled with evidence of the nature and extent of the diminution of that capacity the jury may arrive at a reasonable and just compensation for impairment of earning capacity, and, insofar as that compensation is based only on pain and suffering it is within its enlightened conscience, but, in so far as it is based on the jury's estimate of decreased pecuniary reward in the future, that decrease should be considered future

earnings and reduced to present cash value, and an instruction on annuity tables is in order. There is only one *compensation* for permanent injury as related to ability to labor, earning capacity, or future lost earnings, but that one compensation in the majority of cases involves all three elements, and the elements are arrived at in a different manner because of the exigencies of the case. The early decisions allowing compensation for diminished ability to labor where there are no lost earnings merely recognized that the compensation for the injury inflicted involved different elements, and these different elements involved different classes of proof.

In the present case the plaintiff testified that she made $50 per week selling sandwiches before her injury, and that she helped her husband in the grocery store and service station. She suffered a broken leg, and there is evidence that the resulting injury impairs her ability to walk, that she cannot stoop over to pick things up; that she cannot stand on her feet as she did before; that she is not able to do all of the work she did before, and is not able to do the same amount of work. Her doctor testified that she had a 10% permanent physical disability; that this disability will curtail both the length and duration of time she can work in the future. Such evidence is all of the evidence available on the question of diminished earning capacity. Loss of earning capacity necessarily implies diminution of pecuniary return, and so does loss of capacity to work and labor in every case where the work or labor is subject to a pecuniary return to the plaintiff. But it is in its nature extremely speculative, because, as is frequently pointed out, it is also subject to job availability, economic cycles, desire to work, sickness, old age, necessity for gainful employment, changing labor requirements, and a host of other considerations. The argument of the plaintiff in error here seems to be that there is no evidence to support an instruction on compensation for impaired earning capacity, including future lost earnings reduced to present cash value, because there is no evidence that the plaintiff was making less at the time of trial than at the time of injury.

Such testimony is not essential. Where there is sufficient evidence to show a decreased earning capacity and the amount

thereof, it must follow that there is sufficient evidence to support the instruction given here. If the judge had not charged that the jury should take into consideration lost earnings, and reduce them to present cash value, in arriving at the impairment of earning capacity, we feel sure that this court, under the authority of *Central R. & Bkg. Co.* v. *Passmore,* 90 *Ga.* 203 (15 S. E. 760), would quite properly have held that the instruction might be considered in the nature of general damages. See also *Atlantic Coast Line R. Co.* v. *Hansford,* 85 *Ga. App.* 507 (69 S. E. 2d 681). This is not a charge on lost future earnings as such; it is a charge on diminished earning capacity, in which case it is quite proper and to the advantage of the defendant for the court to caution the jury that any amount included therein as lost earnings be reduced to present cash value. The only alternative to doing this is to leave the amount to the discretion of the jury, which might well result in the jury including a sum to represent lost future earnings not reduced to present cash value.

Based on evidence of what the plaintiff was able to do before and after the injury, the nature and percentage of permanent impairment, and the value of the services before the injury, a jury may make an award as compensation for diminished earning capacity, whether or not the evidence establishes with any exactitude the lost future earnings. Insofar as in doing so it considers any amount of money as lost future earnings in reaching its conclusion as to just compensation, that amount must be reduced to present cash value.

In *Georgia Pacific Ry. Co.* v. *Freeman,* 83 *Ga.* 583, 585 (10 S. E. 277) the following charge was approved: "The burden is on the plaintiff to show the fact that his capacity to labor and earn money has been permanently impaired, and the extent of such impairment, or to furnish data to the jury from which they may be able to ascertain his financial loss in this respect. . . No fixed rule exists for estimating this sort of damage." The trial court then named a number of contingencies which could enter into future earning capacity, including past and future wages. The judge was not speaking solely of mental anguish on account of inability to labor on the one hand, and the value of future earnings on the other—he was speaking of *impairment of capa-*

*city,* which may be evidenced in either way, and which may be compensated in either event. The same charge was given, and the case reviewed, in *Richmond & Danville R. Co.* v. *Allison,* 86 *Ga.* 145 (12 S. E. 352, 11 L. R. A. 43), and the following conclusion reached: "We therefore think that it is better for both parties to let the jury look at these things as a whole, in the light of common sense and their own experience, and let them make such a compensation in their verdict as would be reasonable and just to both parties, not giving to the plaintiff a large sum with the purpose of enriching him, but compensating him for the loss of money which he would probably earn had he not been injured and thereby prevented by the negligence of the defendant. These remarks, of course, apply only to the measure of damages for permanent injury. It is not contended that any fixed rule can be prescribed as a measure of damages for pain and suffering." Again, in *Southern Ry. Co.* v. *Scott,* 128 *Ga.* 244, 246 (57 S. E. 504) it was stated: "As a general rule, where a man is engaged in business or work, no exact procrustean rule as to measuring damages for a permanent injury is laid down. The jury may, but it is not compelled, to adopt the mortality tables as a basis of calculation. The amount found should be reasonable and just to both parties, and should reasonably compensate the plaintiff for the loss of money which he would probably earn, under the evidence, if he had not been injured. A charge along this line is not erroneous, if based on evidence."

3. The evidence here was sufficient to show the plaintiff's earnings prior to injury. It showed she was engaged in the same occupation after injury, and her earnings at the time of trial were not shown. But there was evidence from which the jury could have found that she sustained a permanent injury to the extent of a specified percentage which would affect her capacity to work, the quality of her labor, and the period of its duration. The pleadings asked for compensation for this loss in a specified amount reduced to present cash value. It was not error under these circumstances to charge on impairment of earning capacity, nor to instruct the jury that in estimating it they should compute the reasonable value of loss of earnings. The evidence authorized the instruction. This being so, it was not error to instruct

the jury in the use of annuity tables, and to state that lost earnings must be reduced to present cash value.

In holding as we do, we are aware that a number of cases have been reversed on the ground that evidence similar to that offered here was held not to justify the charge on impaired earning capacity, lost earnings, or use of annuity tables. Those cited by the plaintiff in error include the following: *Atlanta Coca-Cola Bottling Co.* v. *Deal,* 66 *Ga. App.* 211 (17 S. E. 2d 592), and citations; *Railway Exp. Agency* v. *Mathis,* 83 *Ga. App.* 415 (63 S. E. 2d 921); *Atlantic Coast Line R. Co.* v. *Anderson,* 35 *Ga. App.* 292 (133 S. E. 63); *Berry* v. *Jowers,* 59 *Ga. App.* 24 (200 S. E. 195). Every tort case necessarily is based on different facts; yet it is well to admit that the rule as set out here and in the *Hansford* case, supra, is broader than that applied in some of the above cases. Yet we believe this to be the true rule as enunciated by earlier Supreme Court cases herein cited and discussed.

In *West* v. *Moore,* 44 *Ga. App.* 214 (2) (160 S. E. 811) the rule was stated by Judge Jenkins as follows: "While the jury, in determining the amount of the general damages which a plaintiff is entitled to recover as compensation for a permanent injury, may take into consideration the fact that there has been a permanent diminution of his capacity to labor, it is not authorized, in the absence of proof establishing the extent to which his earning capacity has been diminished, to include in its allowance of damages the present worth of money which, but for the injury, he might have earned throughout the remainder of his life." Examination of the record in that case reveals that the plaintiff was an attorney; that his injury resulted in some permanent disability to the flexion of his right arm and shoulder, but that, not only was he making as much money at the time of trial as before the injury but there was no indication in the record that the disability would have any effect upon his future earning capacity or that he could not earn equally as much after the injury as before. What we are saying is that the charge given in the present case is justified because there is evidence "establishing the extent to which his earning capacity has been diminished," which may be done by showing the extent of impairment and its probable

effect upon the work which the plaintiff is equipped to do. In addition there is evidence as to the value of the work prior to such impairment. See *Southern Ry. Co.* v. *Groover*, 41 *Ga. App.* 746 (1), supra; *Draper Canning Co.* v. *Dempsey*, 91 *Ga. App.* 593, 597, supra; *Callaway* v. *Pickard*, 68 *Ga. App.* 637, 647 (6) (23 S. E. 2d 564).

The trial court did not err in denying the motion for new trial. *Judgment affirmed. Gardner, P. J., Carlisle, Quillian and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, Chief Judge, dissenting. The opinion of the majority construes the charge in question as an instruction on the issue of "permanent impairment of earning capacity." I cannot agree with this construction because the charge, in addition to "the diminution of the capacity to earn money" *also* specifically authorizes recovery of "the reasonable value of such loss of earnings" reduced to its present cash value. There can be no doubt that the court in this instance intended to instruct upon the issue of loss of future earnings, since otherwise the instructions on reduction of such loss to its present cash value would not have been necessary. *Chancey* v. *Shirah*, 96 *Ga. App.* 91, 95 (99 S. E. 2d 365) and citation. In addition, the court stated subsequently that "another item of damages that is recoverable on account of personal injury is damages on account of pain and suffering, mental and physical."

At the outset, a great deal of difficulty can be avoided by clarifying the distinction between the right to recover for a loss or diminution of ability to work and labor, and the right to recover for a loss of future earnings. "Impairment of ability to work and labor is an element of pain and suffering for which damages may be recovered by one who is physically injured by the negligence of another. It is the fact of impairment or loss of ability to work, with or without compensation, that is to be considered by the jury in determining the amount to be allowed for pain and suffering, and no evidence as to earnings is necessary in such calculation, the only standard of measurement being the enlightened conscience of impartial jurors." *Railway Exp. Agency* v. *Standridge*, 68 *Ga. App.* 836, 837 (24 S. E. 2d 504), and cases cited therein; *City of Manchester* v. *Beavers*, 38 *Ga. App.* 337, 342

(144 S. E. 11); *Wall Realty Co.* v. *Leslie,* 54 *Ga. App.* 560 (3) (188 S. E. 600). Such loss or impairment need not be pleaded as an item of special damages. Recovery therefor is a part of pain and suffering and need not be reduced to present cash value. *Chancey* v. *Shirah,* 96 *Ga. App.* 91, 95, supra, and citation. Where such recovery is sought for pain and suffering only, "the jury may consider the circumstance of lost earning capacity under the head of pain and suffering." *City Council of Augusta* v. *Drawdy,* 75 *Ga. App.* 543, 549 (43 S. E. 2d 569).

A different situation arises where recovery is sought for loss of future earnings as a separate element of damages. Such loss is pecuniary in nature and must be proved with reasonable certainty. Here again, the loss of earning capacity is pertinent, but it is the pecuniary loss resulting therefrom which the plaintiff would be entitled to recover upon proper proof. Therefore, in a suit for pecuniary loss of future earnings, simple proof of a loss of capacity to work and earn money is insufficient without additional proof of the pecuniary loss, if any, which will result therefrom. "In an action for damages on account of personal injuries, the pecuniary loss resulting from a diminution of the injured person's earning capacity can not be determined solely from proof that as a result of the injuries the capacity to work has been impaired. There must be some data or facts from which the pecuniary value of such diminution can be determined." *City of Atlanta* v. *Jolly,* 39 *Ga. App.* 282 (1) (146 S. E. 770). See also *Nipper* v. *Collins,* 90 *Ga. App.* 827, 830 (84 S. E. 2d 497). It is true that some cases refer to a diminution of "capacity to labor" or "capacity to earn money" as being element of damages (e.g. *West* v. *Moore,* 44 *Ga. App.* 214 (2), 160 S. E. 811; *City Council of Augusta* v. *Drawdy,* 75 *Ga. App.* 543, supra), but a close reading of these opinions will reveal that the actual element of damages in each case is the pecuniary loss of future earnings resulting from the diminution of such capacity.

"Damages recoverable for the loss of probable future earnings must be pleaded, and proved by introducing in evidence sufficient data upon which the jury may base their finding." *Railway Exp. Agency* v. *Mathis,* 83 *Ga. App.* 415, 422 (63 S. E. 2d 921). The measure of such damages "involves numerous considerations,

among which are, first, the earnings before the injury, earnings after the injury, probability of increased or decreased earnings in the future, considering the capacity of the injured party, effects of sickness and old age, etc." *City Council of Augusta* v. *Drawdy,* 75 *Ga. App.* 543, 547, supra. It is error "for the judge to charge the jury on this element of damages, unless there is some evidence upon which the jury can base with reasonable certainty a finding as to the amount of such damages." *Rome Ry. &c. Co.* v. *Duke,* 26 *Ga. App.* 52 (105 S. E. 386). Any amount found for diminished future earnings should be reduced to its present cash value by the jury. *Furney* v. *Tower,* 34 *Ga. App.* 739 (7) (131 S. E. 177) and cases cited therein.

A great many of the cases on this subject are concerned with the question of the sufficiency of the evidence to authorize a charge on loss of future earnings and to present a question for the jury as to the amount of such loss. In *Southern Ry. Co.* v. *Groover,* 41 *Ga. App.* 746 (4) (154 S. E. 706) it was held: "Where the trial occurred more than a year after the plaintiff's injury, and the nature and character of the injury and his then present condition were fully described, with testimony that his injuries were in part permanent, and that his earning capacity had been permanently reduced, and where there was evidence as to his daily earning capacity and also as to what he had earned yearly before his injury, and as to the kinds of work in which he had been engaged and was fitted for, it can not be said that the instruction upon the question of the plaintiff's right to recover damages resulting from a diminution in his earning capacity was without any evidence whatever to warrant it." In *Pollard* v. *Gammon,* 63 *Ga. App.* 852, 864 (12 S. E. 2d 624) this court held: "The jury were authorized to find from the evidence that the plaintiff, as the result of the injury, was impaired in his capacity to do physical labor and to work. As a result thereof he was out of a job for a long while, and at the time of the trial was out of a job, and that after he was injured he performed temporary work for which he received less pay than he had been receiving as a flagman for the defendant at the time of the injury. There was also evidence as to the nature and character of his injuries. His age appeared, and the mortality tables were in evi-

dence. The evidence was therefore sufficient to authorize the jury to find that the plaintiff's earning capacity had, as the result of the injury, been impaired in an ascertainable amount of money as compensation therefor. It was not error for the court to submit this to the jury as an element of damage recoverable." In *Draper Canning Co.* v. *Dempsey*, 91 *Ga. App.* 593, 597 (86 S. E. 2d 678) there was evidence "from which the jury was authorized to find that, after the plaintiff sustained his injuries, he was shifted from one civil service category as an employee of the City of Atlanta to another; that this shift was because he was unable to continue in the former category due to his injuries; that this resulted in a temporary increase in pay of $16.50 per month, but was temporary only, due to the fact that both jobs fell into classifications with specified increments based on length of service, so that within a 5-year period and from then on under such pay schedules the plaintiff would be losing $21 per month." It was held that "there is some evidence here which authorized the jury to find diminished earning capacity with reasonable certainty, and accordingly this assignment of error is without merit." It also appears that in cases where the injury is of such a patent nature that the jury may observe it and determine for themselves the extent to which the plaintiff's capacity to labor, then or in the future, is diminished, such evidence, while somewhat general, will support a charge on the subject of loss of future earnings. *O'Neill Mfg. Co.* v. *Pruitt*, 110 *Ga.* 577, 579 (36 S. E. 59) ; *Louisville & Nashville R. Co.* v. *Culpepper*, 142 *Ga.* 275 (4) (82 S. E. 659).

On the other hand, it has been held in a number of cases that there was no evidence which would furnish the jury a reasonable basis on which to estimate the loss or damage resulting from a diminution of capacity to earn money, and it was therefore error to give the charge excepted to. See *Atlanta Coca-Cola Bottling Co.* v. *Deal*, 66 *Ga. App.* 211, 213 (17 S. E. 2d 592) and cases cited therein; *City of Atlanta* v. *Feeney*, 42 *Ga. App.* 135 (155 S. E. 370) ; *West* v. *Moore*, 44 *Ga. App.* 214 (3), supra; *City Council of Augusta* v. *Drawdy*, 75 *Ga. App.* 543, supra; *Railway Exp. Agency* v. *Mathis*, 83 *Ga. App.* 415, supra; *Nipper* v. *Collins*, 90 *Ga. App.* 827, supra; *Western & Atlantic R.* v.

*Hart,* 95 *Ga. App.* 810 (6) (99 S. E. 2d 302) ; *Harris* v. *Combs,* 98 *Ga. App.* 418 (2) (105 S. E. 2d 760).

In the instant case recovery is sought, among other things, for the loss of future earnings. It appears from the evidence that the plaintiff helps her husband in his combination grocery store and filling station; that she runs a sandwich stand at the store and what she makes selling sandwiches is hers to keep. In the collision with defendant's car, the plaintiff suffered a broken leg, injuries to her knee and various cuts and lacerations. Her doctor testified that as a result thereof she had suffered about a ten percent disability; "it will limit her work to a certain extent, the length of her work, the duration of time in which she could work." The plaintiff herself testified that she was away from the store for several months because of her injuries, during which period she lost about $800 as a result of not being able to work. She further testified: "I was not able to do anything around the store *before I got back to doing my regular duties. I am at the store now.* I have been back there since about two weeks before people started chopping cotton. I don't know what time they started chopping cotton, but I have been back two weeks before they started chopping cotton. *I make the sandwiches myself. Just fix hamburgers and hot dogs."* (Emphasis added).

While this evidence does indicate that the plaintiff has suffered some degree of physical disability, it not only fails to show what pecuniary loss, if any, will result therefrom but on the contrary indicates that the plaintiff has been able to resume her regular duties in the store and continue the operation of her sandwich stand, with no showing that her profits from this enterprise have diminished since her return.

This case therefore differs from *Callaway* v. *Pickard,* 68 *Ga. App.* 637, 647 (23 S. E. 2d 564) where the evidence showed that the plaintiff "was unable to perform the physical acts and manual labor that he had been able to perform before his injury." It is true that in the case at bar the plaintiff did testify that her leg hurt when she had to stand on it while working; that it was stiff and she could not put her weight on it while standing straight up. While such effects may be evidence of pain and suffering, they are not sufficient to show an inability to perform the physical

acts and labor which her employment necessitates to such an extent that her earnings are reduced.

It is further contended that the ruling of the trial court must be affirmed under the decision of this court in *Atlantic Coast Line R. Co.* v. *Hansford,* 85 *Ga. App.* 507 (4), 512 (69 S. E. 2d 681). In that case however, it is specifically stated: "Under the pleadings and evidence in this case, the plaintiff was not suing for loss of future earnings as an item of special damage, but he did allege and prove facts which would authorize the jury to find a diminution in his earning capacity." This being true, the case involves no more than a loss of ability to work and labor and the charge of the court requiring the jury to reduce the reasonable value of lost earning capacity to its present cash value was actually favorable to the defendant. It is further observed that the court restricted its ruling to "the circumstances of this case" and further stated that it did not intend to imply "that loss of earning capacity is compensable where there is no evidence as to earning capacity based on past experience, and evidence must be introduced as to the extent to which the earning capacity has been diminished, and damages so found must be reduced to their present cash value."

There being nothing in the evidence from which the amount of the plaintiff's loss of future earnings, if any, can be determined, the court erred in instructing the jury as to such issue and in overruling the defendant's amended motion for a new trial on this ground.

As I understand the majority opinion, it in effect holds that there can be a double recovery for pain and suffering, which should not be allowed under the principles stated above.

If the majority opinion means that the plaintiff suffered a loss of 10 percent in her future earnings because she had to work 10 percent harder or longer each day the conclusion is erroneous for the reason that there is no loss of future earnings and the fact that the plaintiff had to work harder or longer to earn the same amount of money would and should be charged to pain and suffering because the recovery of lost future earnings must be based on an actual loss of future earnings which the plaintiff here does not have. As I understand the majority opinion, and to me it is

somewhat confusing, it authorizes a recovery in this case not only for pain and suffering because of the 10 percent incapacity, but also authorizes a recovery of lost future earnings without proof of such loss on the theory that such loss can be compensated for as special damages in addition to damages for pain and suffering. I cannot find any case which makes such a holding. I feel sure that the courts never intended to hold that a recovery could be had for pain and suffering because of decreased capacity to labor and in addition damages for lost future earnings without proof from which the amount of lost future earnings could be reasonably ascertained. I think the list of cases cited below, which is by no means exhaustive, demonstrates my contention, and especially significant are the citations in some of the cases which clarify and explain earlier rulings. *Metropolitan St. R. Co.* v. *Johnson,* 90 *Ga.* 500, 508 (16 S. E. 49) ; *Atlanta St. R. Co.* v. *Jacobs,* 88 *Ga.* 647 (15 S. E. 825) ; *Atlanta & W. P. R. Co.* v. *Haralson,* 133 *Ga.* 231 (65 S. E. 437), citing 77 *Ga.* 192, 200, 88 *Ga.* 647, 90 *Ga.* 500, 508, 107 *Ga.* 70 (see the exception to the charge in this case) ; *Railway Exp. Agency* v. *Standridge,* 68 *Ga. App.* 836, supra, citing in addition to cases next above, 111 *Ga.* 464 (8), 122 *Ga.* 82 (2), 136 *Ga.* 591, 139 *Ga.* 389, 155 *Ga.* 579 (4), 13 *Ga. App.* 386, 44 *Ga. App.* 214 (2), 60 *Ga. App.* 567, 569; *City of Manchester* v. *Beavers,* 38 *Ga. App.* 337, supra, citing 125 *Ga.* 354, 357; *Wall Realty Co.* v. *Leslie,* 54 *Ga. App.* 560, supra, citing 145 *Ga.* 656 (2) ; *City Council of Augusta* v. *Drawdy,* 75 *Ga. App.* 543 (2), supra, and citations. See especially *Atlanta, K. & N. Ry. Co.* v. *Gardner,* 122 *Ga.* 82 (2) (49 S. E. 818).